# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 14cr2361 WQH |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| KEVIN JOSEPH HEWITT (2), | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the motion to suppress statements (ECF No. 34) filed by the Defendant Kevin Joseph Hewitt.

## FACTS

On June 30, 2014, United States Border Patrol Agent Matthew Bouchard was patrolling near the town of Jacumba, California, approximately twenty-five miles west of the Tecate, California, Port of Entry. Agent Bouchard was in an unmarked vehicle and wearing plainclothes. At approximately 9:00 p.m., Agent Bouchard reported that he had just observed "an attempted load, aliens loading into a vehicle, around Mile Marker 36 and a half-ish on Old Highway 80, and he [had] seen two – two bodies running into the bushes." (ECF No. 43 at 6). Agent Bouchard reported that he would be going after the vehicle.

Border Patrol Agent Forest Rowley Jr. was approximately one mile from Mile Marker 36 and a half when he received the call, and drove to the vicinity of Mile

Marker 36 and a half in his marked Border Patrol Jeep. As Agent Rowley was pulling up to the reported mile marker, he observed an individual, later identified as Defendant Kevin Joseph Hewitt, "coming off from the bushes on the side of the road flagging [Agent Rowley] down with both arms." (ECF No. 43 at 7). Agent Rowley turned on his overhead lights, pulled to the side of the road, and got out of his vehicle. Agent Rowley testified as follows at the evidentiary hearing:

> Q: [Government counsel] And what happened after you got out of your vehicle and approached him?
>
> A: [Agent Rowley] After I got out of the vehicle, I walked over to the individual and identified myself, "United States Border Patrol," you know, "What is going on? What is your name? What are you doing out here?"
>
> Q: Okay. And what did he say when you asked him his name?
>
> A: He told me his name was Joseph, I believe, and then he told me – I asked him what he was doing, you know, why he was out here, because it is a pretty remote area. I asked him why he was out here. He said that he had gotten in a fight with his girlfriend, and she dropped him off on the highway.
>
> Q. Okay. You indicated he told you his name was Joseph. Did he give you any other names at that time?
>
> A: He did. He gave me – he gave me his name. I don't remember exactly what he gave me, but it came back to his uncle.

(ECF No. 43 at 8). Agent Rowley then testified "[Defendant] also told me that he had been riding in a SUV, he thought it was a Jeep, with four other guys that scared him, so he had them stop and he got out. He also told me that he was walking to the gas station." (ECF No. 43 at 11).

Agent Rowley testified that "after I started questioning him and realiz[ed] that [] he was giving me different stories, [] I said, [] 'Turn around. Put your hands on your neck. I am going to search you for weapons and have you sit on the side of the road.'" (ECF No. 43 at 10). Agent Rowley testified that "[Defendant] was agitated. He was kind of pacing back and forth. He was turning back and forth. And for both of our safety so I don't misunderstand his movements and he doesn't get too close to me, I had him sit on the side of the road." (ECF No. 43 at 16-17). Agent Rowley asked Defendant to sit on the side of the road with his legs crossed and his hands on his thighs.

1  Defendant was not handcuffed.

2  Agent Rowley testified that he continued to question Defendant "as to why he
3  was there and what he was doing." (ECF No. 43 at 12). At some point, other Border
4  Patrol agents arrived on the scene. Agent Rowley directed the other agents to check for
5  evidence of people walking from the bushes near the area where Agent Bouchard had
6  witnessed the load. The backup agents found a foot sign in the soft sand between the
7  bushes and the road. The agents radioed the description to Agent Rowley, who looked
8  at Defendant's foot sign and concluded that the footprints were a match. Agent Rowley
9  handcuffed Defendant and put Defendant into his Border Patrol Jeep. Agent Rowley
10 went to the scene where the other agents had found the foot sign and confirmed that the
11 foot sign matched Defendant's footprints.

12 On August 20, 2014, an indictment was filed charging the Defendant with three
13 counts of transportation of illegal aliens and aiding and abetting in violation of 8 U.S.C.
14 § 1324(a)(1)(A)(ii) and (v)(II) (ECF No. 1).

## CONTENTIONS OF THE PARTIES

16 Defendant moves the Court to suppress any statements made after Agent Rowley
17 asked him to sit on the side of the road. Defendant contends that any statements made
18 in response to questions while seated on the side of the road must be suppressed on the
19 grounds that he was not informed of his *Miranda*[1] rights. Defendant further asserts that
20 the Government cannot satisfy its burden to show these statements were voluntary.

21 The Government contends that *Miranda* warnings were not required because the
22 agent detained Defendant based upon reasonable suspicion as part of a non-custodial
23 *Terry*[2] stop. The Government asserts that the questions asked were limited to the
24 suspicious circumstances that justified the stop. The Government further contends that
25 Defendant's statements were voluntary and not a product of police coercion.

## RULING OF THE COURT

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

1   A *Terry* stop is a brief investigatory stop which is an exception to the probable cause requirement of the Fourth Amendment. "The Fourth Amendment does not proscribe all contact between the police and citizens, but is designed to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *INS v. Delgado,* 466 U.S. 210, 215 (1984). "Beginning with *Terry v. Ohio,*[], the Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further. (citation omitted). To ensure that the resulting seizure is constitutionally reasonable, a *Terry* stop must be limited. The officer's actions must be justified at its inception, and ... reasonably related in scope to the circumstances which justified the interference in the first place." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185 (2004). "An 'officer may question [individuals reasonably detained near the border] about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.'" *United States v. Cervantes-Flores*, 421 F.3d 825, 830 (9th Cir. 2005) (alteration in original) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82).

Warnings under *Miranda v. Arizona,* 384 U.S. 436 (1966) are required prior to "custodial interrogation." *Id*. at 444. "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. "[T]he temporary and relatively nonthreatening detention involved in a ... *Terry* stop does not constitute *Miranda* custody." *Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) (citation omitted).

In this case, Defendant initiated the interaction with Agent Rowley by waving the agent down. This interaction was voluntary and Agent Rowley was entitled to ask Defendant "What is going on? What is your name? What are you doing out here?" (ECF No. 43 at 8). Defendant does not move to suppress statements made prior to Defendant

sitting on the side of the road.

The government has offered no evidence in this record of any statements by Defendant made after Defendant was seated on the side of the road. Any statements made to Agent Rowley after Defendant was seated on the side of the road may not be presented to the jury without further order of the Court.

## CONCLUSION

IT IS HEREBY ORDERED that the motion to suppress statements (ECF No. 34) after Defendant was seated on the side of the road is granted.

DATED: February 13, 2015

**WILLIAM Q. HAYES**
United States District Judge